The next case today is 5-24-0201, People v. Dean. Arguing for the appellant is Thomas Gonzalez. Arguing for the appellee is Justin Nicolosi. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for a vote. Please note, only the clerk of the court is permitted to record these proceedings today. Afternoon, counsel. Good afternoon. As you can see, Justice Barberis is not present. He will be listening to recording of the oral arguments and will be participating in the ultimate disposition of this case. That said, appellant, if you are ready to proceed, you may do so. Good afternoon, your honors. May it please the court, counsel. My name is Thomas Gonzalez. I will be representing the appellant, Jonathan Dean. I just wanted to point out, I was not the initial attorney on this appeal. I inherited at the reply brief stage. I'm going to focus my remarks today focusing on issue 1C and issue 3, unless the court has any questions on the other issues. Counsel, what are issues 1C and 3? So I don't have to read the brief. I'm sorry. 1C is we're challenging the evidence failure to prove Dean's guilt beyond a reasonable doubt with respect to count 1. So that's issue 1C. And then issue 3 is a failure to give the jury instruction pursuant to section 11510C. So 1C would be the issue of the penetration incline, correct? Vaginal penetration. All right. Thank you. Sure. So the state failed to prove Dean guilty of that particular count because MD repeatedly said that he never made any contact with her vagina with his penis. Count 1 is the count that specifically alleged that sexual penetration between his penis and MD's vagina within the relevant time period. And the state's evidence was wholly lacking on that because the CFC interview, she consistently denied that that ever happened. She specifically said that Dean never put his penis in her, quote, unquote, pregnancy hole, which is what she referred to or called her vagina. Her trial testimony also makes no reference to any act of penis to vagina contact. She basically testified that Dean, quote, touched her private parts or her cooch. But then she testified that her cooch is between her legs. She did not specify which private parts she was referring to. The vagina and anus are, of course, both private parts. She did refer to her anus as, quote, the other hole. And she maintained that Dean put his penis in her, quote, other hole. Baldwin's testimony, because this is what the state, I think, relies on primarily, is that Baldwin's testimony was equally lacking. She testified about MD's use of these anatomically correct dowels, where MD put the male dowel on top of the female dowel, putting the penis, quote, right at the edge of the vagina. But then she clarified that she's referring to the area between the vaginal opening and the anus. Now, the actual video of that CFC interview itself doesn't really show or definitively show the positions of the dowels. This is now just strictly Baldwin's word. I do acknowledge that at one point she testified that MD showed just the tip of the male dowel, male dowel's penis, quote, going into the vaginal opening, unquote, of the female dowel. However, she later conceded on cross that MD consistently stated that Dean put his penis in her, quote, other hole. So her testimony on that particular account certainly didn't amount to proof beyond a reasonable doubt on count one. It also should be noted that in argument two, the state actually concedes that in Baldwin's CFC interview, she went out of her way multiple times to clarify for Baldwin that Dean never put his penis in her pregnancy hole and that she refrained from adding other acts that did not occur. So the state can't have it both ways right now. So in sum, with respect to count one, at the very least, first of all, we maintain that the evidence was insufficient to prove his guilt on all counts. But again, at the very least, it was wholly insufficient with respect to count one, where MD repeatedly denied that any such penis vagina contact contact occurred at all. Unless there's any other questions on that particular argument, I'll go ahead and send to issue three. So here, Dean was denied a fair trial where the jury was not instructed on how to weigh this very critical piece of evidence, this out of court statements that the instruction was required. What's your response to the state's argument that jury instruction 1.02 covered it? Sure. Well, first of all, I think those instructions, they may convey similar principles, but they they're geared towards two different aspects of the case and pieces of evidence for the jury to consider. So I think one basic answer is, first of all, if they were the same, there'd be no use for having 11.66. They're clearly not the same. And 1.02, in particular, instructs the jury on how to assess all witness testimony that's presented in court. It's kind of a more general assessment of all witnesses, whereas 11.66, on the other hand, instructs a jury on how to assess out of court statements and out of court statement made by a child witness in particular. It's very important because, again, if they were the same, there'd be no reason to have different instructions. And the state, of course, acknowledges that it was clear error for defense counsel not to offer this particular instruction. And I do want to come back to the language about that, just to your question, Justin McHaney, because, you know, 1.02, you know, it's cited in the brief, so I won't belabor it, but it says what it says. And again, it talks about the ability of witnesses to observe the age, the memory, manner, while testifying, interest, bias or prejudice, you know, things of that nature. Whereas 11.66, it basically says it's a lot more specific. If it were given in this case, it would have directed the jury about that. You've heard evidence that MD made a statement concerning the charge defenses, and it's for them to determine whether or not, number one, she even made the statement. And number two, if so, what weight should be given again to those hearsay statements, the outcry statements that she made. And in making that determination, that they're to consider, of course, her age, the nature of the statements, and, of course, the circumstances under which they were given. And I will stay in on the brief, of course, with respect to issues two, but issue two outlines in detail what I maintain or the unreliability, unreliable nature of those statements and why they should not have been admitted. Steve, do you think it's fair to say that 11.66 is asking the jury to pay particular attention to a child's witness, as opposed to the 1.02 with any evidence? Sorry, Your Honor, was that a question for me? No, that was for the actually it was for the state. Well, let's be, I mean, I meant, I'm sorry. It was for the defense. Yeah.  So I hesitated to, Your Honor, as I wasn't sure. I thought it might be directed to a co-counsel. But I think it is fair to say that because, again, I mean, I got the language right here. It says 1.02. It says only you are the judges of the believability of the witnesses and the weight to be given to their testimony, their testimony of each of them. In considering the testimony, you may take into account his ability and opportunity to observe his age, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony in light of the other evidence. Whereas, again, 11.66 talks about the Ida court statements. It talks about the hearsay statements. In this case, the statements made under Section 115.10. And 115.10c, it specifically mandates this instruction. Okay, so they're just, they're clearly not the same. And, you know, and again, if they were the same, there'd be no reason to even have 11.66. So one definitely speaks to the outcry statements in the context of a child witness. And I submit that in this particular case where MD's testimony was so lacking, wholly lacking, because her testimony was even more sparse, that it was even more critical that the jury be given 11.66. And to the extent that it wasn't, there was, I think, more than a reasonable chance that it affected the outcome of the trial, because they were given absolutely no guidance on this critical piece of evidence. And, you know, as far as any direction on how to evaluate this very critical piece of evidence. So, and again, just pointing out how the state, again, concedes that it was clear and obvious error. The evidence was closely balanced as outlined in Issue 1 in terms of, you know, the unreliability of statements, the conflicting and the vague and the confusing testimony. And, of course, all of the shortcomings of the CFC interview itself. So, you know, barring any other questions on that, you know. Any further questions? I was asked just to show her if she had any questions. No, no questions at this time. Okay. Well, in sum, I would just reiterate that the court's failure to provide this critical instruction was a clear and obvious error, which, again, the state concedes in a deprived dean of a fair trial. Therefore, this court should reverse dean's convictions and remand this cause for a new trial. All right, thank you, counsel. You'll be given time for rebuttals. Now, state, you can answer that question. Good afternoon, Your Honors. May it please the court. Mr. Gonzalez, my name is Justin Nicolosi. I represent the state in this manner. I'm going to start right with Issue 3. I feel like the conversation left off there with Mr. Gonzalez's argument. So, while that issue is kind of right on everyone's minds, I'll ease into that one. Now, I'll discuss Issue 1C that counsel discussed. Again, as I wrote in my brief, I acknowledge that error was committed in this case, IPI 1166. It's that no reversible error was committed regarding the jury instructions. That is because IPI 1.02 was given. I quote in my brief that the case of People v. Argent, which is an Illinois Supreme Court, and where the identical situation happened, the jury there was also not given 11.66, but instead it was given, I shouldn't say instead, it was given 1.02, which, again, they all deal with instructing the jury how to consider the testimony of a witness. I'll get to the word testimony. I know Mr. Gonzalez stressed that word. I'll get to that in a second. But the court and sergeant found that the jury was not without direction. It wasn't been nothing to determine how to judge the statements and testimony offered by a witness. It was given 1.02, and that was sufficient to establish that there are no prejudices occurred regarding the state summits. This court has to follow People v. Argent. It's the same situation, and it's binding on this court. Regarding the issue of the word testimony, which is prevalent in 1.02, but not in 11.66, sergeant also addressed that. The court noted that it was highly likely that the jury understood that the recorded statements were akin to testimonial evidence. That's the same in our case. The statements were admitted pursuant to 115-10, and they were admitted for substantive evidence that the jury could consider those statements just like testimony. The jury knew that. Therefore, the fact that that was not testimony per se, that does not persuade in this case because, again, those statements were akin to testimony. The victim testified. Those statements were provided, or he was given some direction via 1.02 about how to consider this individual's statements regarding her memory, her bias, her opportunity to observe, all these other tools that a jury can consider the weight of a testimony or a statement. Just like the court did in Sargent, the state submits, the court should find just as the Supreme Court did and find that no reversal of error committed regarding plain error or ineffective assistance regarding the act of 11.66. Moving on to, moving back, I guess, to issue 1.01c. Before I get to that, the state would argue that this court could affirm the convictions in counts 2, 3, and 4. The record, the statements, the testimony, especially the statements of 4, are overwhelmingly convincing regarding those 3 counts regarding the penis-to-anus contact, the touching of defendant's mouth with the victim's, sorry, the defendant's penis with the victim's mouth and the victim's vagina with the defendant's mouth. The state submits. The evidence wouldn't be any more strong regarding those 3 counts. The court should resoundingly affirm those 3 convictions. Regarding the evidence pertaining to count 1, the state acknowledges that the evidence regarding the other 3 counts is certainly more prevalent and more, a higher degree of quantity and quality than the evidence regarding the penis-to-vagina contact. As I did in my brief, I point to the evidence supporting that count. Obviously, the jury found the defendant guilty of that count. And the state points to the fact that, as Mr. Gonzalez said, in Mr. Boland's testimony, that when demonstrating on the anatomically correct dowels, MD did position the male dowel with, quote, just the tip, end quote, of the penis touching female dowels, vaginal opening. That supports the jury's finding. MD also testified that defendant touched her private part with his, based on the anatomical dowel snippet in the statement in the video, the jury could have used that testimony regarding the private parts as more support that the defendant did, in fact, state, however, that's the evidence that, you know, and any rational jury, jury, trier of fact could have taken those pieces of evidence and convicted the defendant on count 1. Are there any other questions? I'd be happy to answer. Regarding the issues I discussed, the areas of this case that were not discussed. Justice Schiller, any questions? No, not at this time. Very well. Revetal? Sure, just some brief comments. And I just, Constable Nicolosi broke up there a little bit when talking about Issue 1, at least on my end. But I think I got the gist, I think, of what he was arguing. So a couple brief points. I'm going to start with Issue 3. Basically, the state's position is essentially that the two instructions are the same. There was no error, certainly no error that made a difference because 102 was enough. End of story. And that somehow the Illinois Supreme Court's decision that Sargent somehow settles that. And I submit that Sargent doesn't settle anything. And it's certainly not instructive to the extent that in Sargent, you know, the state there, of course, acknowledged, like the state does here, that the failure to give the instruction was a clear and obvious error. So certainly there's that similarity. But, again, in that case, in the context of addressing plain error, the court held that in Sargent, the evidence wasn't closely balanced because the defendant in that particular case basically confessed to the acts for which he was charged. That didn't occur here. That didn't occur here. He never confessed to anything. So we certainly didn't have that weight of evidence that they had in Sargent. And then Sargent went on to basically hold that relief wasn't warranted because this wasn't the second problem. This wasn't that structural error. And in this particular case, Dean isn't arguing that it was structural error. We are arguing, again, for the reasons cited in Argument 1 and for what I articulated earlier, that here the evidence was closely balanced because it did come down to a credibility contest, essentially between Heather Dean and MD. And, again, MD's testimony and her out-of-court statements were fraught with weaknesses for all the reasons previously cited. So that's my rebuttal on that point. And as far as, you know, counsel mentioned that, well, the jury could have rationally found or made the decision on count one to decision to convict. But, again, maybe because they weren't properly instructed in the first place, because they weren't properly instructed on how to weigh MD's CFC statements to the outcry witness. So that's critically important. And the only point, as far as I'll make on Issue 1, is, again, the state is coming back to Boland's testimony, which, again, she contradicts herself twice because twice she conceded and acknowledged that MD never made any reference to Jonathan penetrating her vagina with his penis or a pregnancy hold. And the state concedes as much in Issue 2. Basically says, well, she, you know, MD made a point to go out of her way to make sure she didn't add any acts that didn't occur. So, again, now the state's trying to have it both ways, talking out of both sides of its mouth, by now saying that somehow Boland's testimony shows that that penis-to-vagina contact occurred. And after already conceding in his brief that it did not occur, that MD never went out of her way to insert acts that did not occur. So, again, we maintain that the evidence was wholly insufficient, even if Boland made that brief reference to the Dows. She certainly twice conceded that at no time did MD mention any kind of penetration with a pregnancy hold with Dean's penis. So, again, we maintain that on all of the counts, but certainly at the very least with respect to Count 1, that Dean's conviction should be reversed. And on Issue 3, that his conviction should be reversed and this cause remanded for a new trial. Are there any other questions? Any final questions for Ms. O'Shelley? No, thank you. All right, counsel, we appreciate your arguments. We will take this matter under advisement, issue a ruling in due course.